UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEREK LYNN HARRIS,

          Petitioner,

v.                                                             CASE NO. 10-15089
                                                               HONORABLE PAUL D. BORMAN
CARMEN PALMER,

          Respondent.
_____/

## OPINION AND ORDER
## DENYING THE HABEAS CORPUS PETITION AND
## DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Petitioner Derek Lynn Harris has filed an application for the writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  Petitioner challenges his convictions for two counts of

assault with intent to commit murder, MICH. COMP. LAWS § 750.83, and one count of

possession of a firearm during the commission of a felony (felony firearm), MICH. COMP.

LAWS § 750.227b.  He alleges that:  (1) the exclusion of a *res gestae* witness at trial

deprived him of a fair trial;[1] (2) trial counsel was ineffective for failing to seek an

adjournment of the trial after he learned about the *res gestae* witness; (3) the prosecutor

presented insufficient evidence at trial; and (4) the prosecutor's closing arguments

---

[1]  A *res gestae* witness is someone who "witness[es] some event in the continuum
of the criminal transaction and [whose] testimony would . . . have aided in developing a
full disclosure of the facts at trial."  *People v. Long*, 246 Mich. App. 582, 585 (2001)
(citing *People v. O'Quinn*, 185 Mich. App. 40, 44 (1990)).

deprived him of a fair trial. Respondent Carmen Palmer argues in an answer to the petition that the fourth habeas claim is procedurally defaulted because Petitioner failed to make a contemporaneous objection to the prosecutor's conduct at trial. Respondent asserts that Petitioner's remaining claims should be denied as meritless.

The Court has found it more efficient to address Petitioner's fourth claim on the merits than to analyze whether the claim is procedurally defaulted. Thus, the alleged procedural default is excused. And because none of Petitioner's claims have merit, the habeas petition will be denied.

## I. BACKGROUND

The charges against Petitioner arose from a shooting on Brentwood Street in Detroit on February 18, 2007. The complaining witnesses were twenty-one-year-old Robert Johnson and his mother, Rosalind Johnson.

Petitioner was tried jointly with his brother, Derone Harris, in Wayne County Circuit Court. The prosecution witnesses established that, on an unspecified date, a young man named Javare Goods fired a gun at Robert Johnson's car. Robert reported the incident to the police and attended Javare's preliminary examination in state district court. Petitioner's brother, Derone Harris, was present at the preliminary examination, and he looked at Robert in an unfriendly manner as though he wanted to harm him. That was the first time Robert and his mother saw Derone. They knew Petitioner through Robert's younger brother who "hung out" with Petitioner. Robert received a subpoena to testify in Javare Goods' case, but he did not honor the subpoena because Javare and his family

2

replaced his car or gave him money for the damage done to his car.

On February 18, 2007, Robert saw Petitioner, Derone Harris and Deshawn Hardwick at a gas station in Detroit. Derone said to Robert, "Snitch . . . , how you going to snitch on somebody that supposed to be your boy?" Derone was talking about Javare Goods, who was Derone's friend. Petitioner and Deshawn Hardwick were seated in a nearby car at the time, but they did not say anything. Robert went home and informed his mother what had happened.

About twenty-five minutes later, Robert left home with his mother. As they drove slowly down Brentwood Street, they saw the Harris brothers and Deshawn Hardwick standing in the driveway of the Harris brothers' house. Petitioner was holding an assault rifle at his side. Deshawn Hardwick was holding a small gun, and Derone Harris was holding a nine-millimeter handgun. Mrs. Johnson heard the three men say, "There's [the guy], shoot." Petitioner then lifted his gun and fired seven or eight gunshots at Robert's car.[2] One of the gunshots grazed Robert's back. Several other gunshots hit various parts of his car. The gunshots had two different sounds.

After the shooting, the three gunmen ran toward the back of the house, and Robert Johnson left the area. Mrs. Johnson, however, got out of the car and yelled, "Y'all shot my car. Y'all hurt my son." Javare Goods' father, who was a state trooper, was behind Robert's car at the time, and he took Mrs. Johnson to the hospital to see whether Robert

---

[2] Robert Johnson testified that Petitioner shot at his car, whereas Mrs. Johnson testified that both Derek and Derone fired at the car.

was there.

Robert went to the police station, not the hospital, after the shooting.  He tried to tell the police what had happened, but the officers would not let him talk.  They said he was too "hyper" and that he should take care of an outstanding arrest warrant for loitering.  Consequently, Robert did not make a report.  Several officers looked at his car, however, and although they initially put handcuffs on him, they released him about twenty minutes later.

On February 27, 2007, Police Officer Edward Sumler was investigating another matter when he learned from Robert Johnson that there had been an incident about two and a half weeks earlier.  Officer Sumler then looked at Robert's vehicle and noticed what appeared to be more than ten bullet holes inside and outside his car.  He detained a juvenile by the name of Hardwick, and, later in the investigative process, he was given the names Derone and Derek, who was also known as "Big."

On May 18, 2007, Deshawn Hardwick's brother Devin called Robert Johnson a "snitch."  Robert then hit Devin Hardwick with his car.  He served several months in jail for his conduct, but on October 19, 2007, after his release from jail, he provided the police with a written statement about the shooting that occurred on February 18, 2007.  He named Petitioner, Derone Harris, and Deshawn Hardwick as being involved in the shooting.  Deshawn Hardwick later pleaded guilty for his role in the shooting.

Petitioner did not testify or present any witnesses at trial.  His defense was that the complaining witnesses were not credible.

4

On January 30, 2008, the jury found Petitioner guilty, as charged, of two counts of assault with intent to commit murder and one count of felony firearm. Petitioner filed a motion for new trial in which he alleged that the prosecution had failed to notify the defense team that state trooper Thomas Goods was directly behind Robert and Rosalind Johnson's car at the shooting on February 18, 2007. The trial court held a hearing and then denied the motion.

On March 6, 2008, the trial court sentenced Petitioner to two years in prison for the felony firearm conviction, followed by concurrent terms of thirteen to twenty-three years for each of the assault convictions. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished, *per curiam* opinion, *see People v. Harris*, No. 284312, 2009 WL 2426310 (Mich. Ct. App. Aug. 6, 2009), and on January 27, 2010, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Harris*, 485 Mich. 1052 (2010) (table). Petitioner filed his habeas corpus petition through counsel on December 22, 2010.

## II.  STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 783 (2011). Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).  To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 786-87.

## III.  DISCUSSION

### A.  The Exclusion of a Witness

Petitioner claims that the trial court erroneously denied his motion for new trial, which was based on the prosecution's failure to discover and disclose a *res gestae* witness.  The witness was Michigan State Trooper Thomas Goods, who took Rosalind Johnson to the hospital after the shooting on February 18, 2007.  Petitioner claims that the prosecution had a duty to investigate the facts and reveal all relevant evidence, including the fact that Trooper Goods was behind the complaining witnesses at the crime scene.  Petitioner contends that the prosecutor's failure to inform him about Trooper Goods deprived him of due process and the right to present a complete defense to the crimes.  The Michigan Court of Appeals concluded on review of Petitioner's claim that his arguments lacked merit.

### 1.  Clearly Established Federal Law

"Under *Brady* [*v. Maryland*, 373 U.S. 83 (1963)], the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment."  *Smith v. Cain*, __ U.S. __, __, 132 S. Ct. 627, 630 (2012).  But Petitioner bears the burden of showing that the prosecution suppressed evidence.  *Bell v. Howes*, 703 F.3d 848, 853 (6th Cir. 2012) (citing *United States v. Warshak*, 631 F.3d 266, 300 (6th Cir. 2010)), *cert. denied*, __ S. Ct. __, No. 12-9585, 2013 WL 1346367 (U.S. June 3, 2013).  To state a true *Brady* violation, he must demonstrate that (1) the evidence at issue was favorable to him, either because it was

7

exculpatory or impeaching, (2) the State suppressed the evidence, either willfully or inadvertently, and (3) prejudice ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "So long as favorable evidence could very well affect the jury's decision, prosecutors *must* disclose it. And when they fail to do so, courts have a duty to order a retrial, allowing a jury to consider the previously concealed evidence." *United States v. Tavera*, __ F.3d __, __, No. 11-6175, 2013 WL 3064599, at *1 (6th Cir. June 20, 2013).

## 2. Application

At trial, Rosalind Johnson testified that she called Trooper Goods on her cell phone before leaving home on the night of the shooting. According to her, Trooper Goods followed her and Robert when they left home, and he was directly behind the Johnsons' vehicle when the defendants fired at them. Trooper Goods subsequently took her to the hospital to look for Robert. (Trial Tr. Vol. I, 200-02, 214, Jan. 29, 2008.) She thought that she had mentioned Trooper Goods to the police when she provided them with a statement (*id*. at 208-09), but at the hearing on Petitioner's motion for new trial, she admitted that, before trial, she never told the prosecutor or the officer in charge of the case about Trooper Goods. She further admitted that the first time she talked about Trooper Goods was at trial in response to one of the defense attorney's questions. (Mot. Hr'g, 12-13, Feb. 27, 2008.)

The officer in charge of the case, Joseph Rocha, testified at the post-conviction hearing that neither Mrs. Johnson, nor anyone else, told him that Trooper Goods may have been at the scene of the crime. (Evidentiary Hr'g 4, 6-7, Feb. 29, 2008.) Officer

8

Rocha was familiar with Trooper Goods due to an unrelated matter, and because Trooper Goods did not respond to the messages that Officer Rocha left for him, Rocha had the impression that Goods was evading him. (*Id*. at 9.)

The prosecutor made an offer of proof at the hearing and stated that, although Mrs. Johnson had given her a first name and some information about a state trooper, that information was provided to her in connection with Trooper Goods' gift of money or a car to Robert Johnson after Javare Goods shot up Robert's car. The prosecutor had no memory of anybody saying that Trooper Goods was at the crime scene on February 18, 2007. In fact, she claimed to have been just as surprised as anyone else at trial when Mrs. Johnson testified that Trooper Goods was there.

The prosecutor explained at the hearing that Trooper Goods was facing criminal charges on an unrelated matter and was entitled to invoke his Fifth Amendment rights in Petitioner's case for dereliction of duty at the scene of the crime. (*Id*. at 12-13, 17-18, 20-21, 23.) Petitioner's attorney conceded at the evidentiary hearing that the defense team had failed to establish that the prosecutor knew, prior to Mrs. Johnson's testimony at trial, that Trooper Goods was present at the crime scene. (*Id*. at 31.)

The trial court ruled that the attorneys knew something about Trooper Goods, but that neither side knew Goods was an eyewitness to the crime and that Goods' presence at the scene was a surprise to everyone. The trial court concluded that there was no misconduct on the part of the police or the prosecution. And because Goods was facing criminal charges and was not being cooperative, the trial court opined that the result of

9

the proceeding would not have been different if Goods had testified.  Accordingly, the

court denied Petitioner's motion for new trial.  (*Id*. at 37-38.)  The Michigan Court of

Appeals determined that the trial court did not abuse its discretion by denying the motion.

The state appellate court's decision was not objectively unreasonable because the

record indicates that, prior to trial, the prosecutor, her predecessor, and the police knew

nothing about Trooper Goods being at the crime scene.  Thus, Petitioner has failed to

show that the prosecutor suppressed evidence.

Petitioner also has not demonstrated that the evidence at issue was favorable to

him and that prejudice ensued as a result of the exclusion of Trooper Goods as a witness.

It is mere speculation that Trooper Goods would have testified in Petitioner's favor or

would have had anything significant to say in an interview with defense counsel.  It is just

as likely that Goods would have confirmed what Robert and Rosalind Johnson observed.

Furthermore, Petitioner and his attorney became aware at trial that Trooper Goods

was present at the crime scene.  *Brady* generally applies only to a complete failure to

disclose, not to delayed disclosure of exculpatory information.  *United States v. Davis*,

306 F.3d 398, 421 (6th Cir. 2002).  "If previously undisclosed evidence is disclosed, as

here, during trial, no *Brady* violation occurs unless the defendant has been prejudiced by

the delay in disclosure."  *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986).

Petitioner has not demonstrated that he was prejudiced by the delay in disclosing

information about Trooper Goods being at the scene of the crime.

For all these reasons, the Court finds that Petitioner has failed to allege a true

10

*Brady* claim.  Therefore, he has no right to relief on the basis of his first claim.

**B.  Trial Counsel**

In a related claim, Petitioner alleges that his trial attorney should have asked to have the trial adjourned when he discovered that Trooper Goods followed the complaining witnesses to the crime scene.  Petitioner asserts that, not requesting a continuance amounted to ineffective assistance, because his attorney could have interviewed Trooper Goods during an adjournment in the trial to determine what Trooper Goods may or may not have seen.  Petitioner contends that counsel might have been able to obtain exculpatory information from Trooper Goods, and even if the information he obtained were harmful to his case, he could have formulated a different or more complete defense.

The Michigan Court of Appeals determined that this claim was not preserved for appeal because Petitioner did not move for a new trial on the basis of ineffective assistance of counsel and because he failed to request an evidentiary hearing on his claim. The Court of Appeals nevertheless concluded that Petitioner's claim lacked merit because he could not overcome the presumption that counsel's decision to proceed with trial was a matter of sound trial strategy.

**1.  Clearly Established Federal Law**

To prevail on his claim about trial counsel, Petitioner must show that his attorney's "performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*,  466 U.S. 668, 687 (1984).  The "deficient performance" prong

11

"requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

To demonstrate that counsel's performance prejudiced the defense, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693).

### 2. Application

The record indicates that trial counsel made a strategic decision not to request a continuance and chose instead to argue that Robert Johnson was not a credible witness because he failed to mention anything about Trooper Goods being at the crime scene. (Trial. Tr. Vol. II, 35, Jan. 30, 2008.) Trial counsel's rhetorical question, "Where is [Trooper Goods] today?" (*id.* at 39) also implied that the prosecutor should have produced Goods as a witness. The Michigan Court of Appeals therefore reasonably concluded that Petitioner had not overcome the presumption that counsel's decision to proceed with trial was a matter of sound trial strategy.

Even if trial counsel's performance was deficient, it is mere speculation that

12

Trooper Goods' observations or lack of them would have helped Petitioner formulate a better defense.  Thus, Petitioner has failed to show that his attorney's failure to seek a continuance of trial to interview Trooper Goods prejudiced him.  And because the possibility existed that Trooper Goods would have refused to say anything on the ground that he might incriminate himself,[3] the state appellate court's decision that trial counsel was not ineffective was objectively reasonable.

## C. The Sufficiency of the Evidence

The third habeas claim alleges that the evidence at trial was insufficient to support Petitioner's convictions for assault with intent to commit murder.  Petitioner notes that there was no physical evidence linking him to the crime, and, according to him, it is even conceivable that he was not present during the shooting.  He contends that the prosecutor relied on the testimony of two biased and less than credible complaining witnesses.  The Michigan Court of Appeals rejected this claim and concluded that the prosecution presented sufficient evidence for a rational trier of fact to conclude that Petitioner committed two counts of assault with intent to commit murder.

### 1. Clearly Established Supreme Court Precedent

The relevant question on habeas corpus review of a sufficiency-of-the-evidence

---

[3] Trooper Goods may have been guilty of dereliction of duty at the crime scene. There was also some suggestion at trial that he may have engaged in illegal activity by giving money or a car to Robert Johnson to prevent Robert from testifying in Javare Goods' criminal case.

claim is "whether, after viewing the evidence in the light most favorable to the

prosecution, *any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing

*Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)) (emphasis in original). This standard

"must be applied with explicit reference to the substantive elements of the criminal

offense as defined by state law." *Id*. at 324 n.16.

> "*Jackson* claims face a high bar in federal habeas proceedings because they
> are subject to two layers of judicial deference. First, on direct appeal, "it is
> the responsibility of the jury — not the court — to decide what conclusions
> should be drawn from evidence admitted at trial. . . . And second, on
> habeas review, "a federal court may not overturn a state court decision
> rejecting a sufficiency of the evidence challenge simply because the federal
> court disagrees with the state court. The federal court instead may do so
> only if the state court decision was 'objectively unreasonable.' " *Ibid*.
> (quoting *Renico v. Lett*, 559 U. S. __, __, 130 S. Ct. 1855, 1862, 176 L. Ed.
> 2d 678 (2010)).

*Coleman v. Johnson*, __ U.S. __, __, 132 S. Ct. 2060, 2062 (2012) (*per curiam*).

## 2. Application

In Michigan, the elements of assault with intent to commit murder are "(1) an

assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing

murder." *People v. Hoffman*, 225 Mich. App. 103, 111 (1997). An assault is "either an

attempt to commit a battery or an unlawful act that places another in reasonable

apprehension of receiving an immediate battery." *People v. Starks,* 473 Mich. 227, 234

(2005). "The intentional discharge of a firearm at someone within range is an assault."

*People v. Johnson*, 54 Mich. App. 303, 304 (1974). In addition,

14

one may . . . draw reasonable inferences to assist in making the finding of
an actual intention to kill.  The requisite intent may be gleaned from the
nature of the defendant's acts constituting the assault; the temper or
disposition of mind with which they were apparently performed, whether
the instrument and means used were naturally adapted to produce death, his
conduct and declarations prior to, at the time, and after the assault, and all
other circumstances calculated to throw light upon the intention with which
the assault was made.

*People v. Brown*, 267 Mich. App. 141, 149 n.5 (2005) (citations and quotation marks
omitted).

Both Robert Johnson and Rosalind Johnson knew Petitioner before the incident on
February 18, 2007.  Robert, moreover, testified that, when he and his mother drove past
Petitioner's house, Petitioner was holding an assault rifle at his side.  Robert saw
Petitioner lift his gun; sparks came out of the gun, and he heard seven or eight gunshots
from what appeared to be two different guns.  Several of the gunshots hit his vehicle, and
one of them grazed his back.  (Trial Tr. Vol. I, 84-97, Jan. 29, 2008.)

Mrs. Johnson testified that Petitioner was armed with an assault weapon
immediately before the shooting and that both Petitioner and his brother Derone raised
their guns and fired at the vehicle where she and Robert were seated.  (*Id*. at 174-76.)  She
also heard Petitioner and his companions say something like, "There he is, shoot." (*Id*. at
193, 195.)

The Johnsons' testimony established an attempt to commit a battery (an assault)
and an actual intent to murder.  Further, if the shooting had been successful and the
victims had died, the crime would have been murder.  Thus, there was sufficient evidence

15

to support Petitioner's convictions for assault with intent to commit murder.

Petitioner contends that the complaining witnesses were biased and less than

credible, but

> a reviewing court does not reweigh the evidence or redetermine the
> credibility of the witnesses whose demeanor has been observed by the trial
> court. *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S. Ct. 843, 74 L.
> Ed.2d 646 (1983). It is the province of the factfinder to weigh the probative
> value of the evidence and resolve any conflicts in testimony. *Neal v.
> Morris*, 972 F.2d 675, 679 (6th Cir. 1992). An assessment of the credibility
> of witnesses is generally beyond the scope of federal habeas review of
> sufficiency of evidence claims. *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir.
> 2000). The mere existence of sufficient evidence to convict therefore
> defeats a petitioner's claim. *Ibid*.

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003).

Petitioner also contends that the evidence was insufficient because there was no

physical evidence, such as a gun, bullets, or casings, tying him to the crime. This claim

lacks merit because "physical evidence is not required to sustain a conviction." *Davis*,

306 F.3d at 409.

A rational trier of fact could have concluded from the evidence taken in the light

most favorable to the prosecution that Petitioner assaulted Robert and Rosalind Johnson

with the intent to murder them. Consequently, the state appellate court's determination

that the evidence was sufficient to sustain Petitioner's convictions was not contrary to, or

an unreasonable application of, *Jackson*.

**D.  The Prosecutor**

The fourth and final habeas claim alleges that the prosecutor's closing arguments

16

deprived Petitioner of his right to a fair trial.  Specifically, Petitioner argues that the

prosecutor vouched for the credibility of the complaining witnesses and violated his rights

under the Fifth Amendment by directing the jury's attention to his failure to testify.

Petitioner also alleges that his trial attorney was ineffective for failing to object to one of

the prosecutor's remarks.

The Michigan Court of Appeals reviewed Petitioner's prosecutorial-misconduct

claim for "plain error" because Petitioner did not preserve his claim for appellate review

by objecting at trial to the alleged misconduct.  The Court of Appeals went on to conclude

that the prosecutor's conduct was not improper and that Petitioner could not demonstrate

plain error affecting his substantial rights.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review."

*Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).  A reviewing court may grant

relief only when the prosecutor infringes on specific provisions of the Bill of Rights or

infects the trial with such unfairness as to make the resulting conviction a denial of due

process.  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  To prevail on his claim,

Petitioner must show that the prosecutor's arguments were so egregious "as to render the

entire trial fundamentally unfair."  *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir.

1979).  Federal courts in this Circuit

> apply a "two-part test to determine whether the state court reasonably
> applied the federal standard in holding that prosecutorial misconduct did not
> render [the petitioner's] trial fundamentally unfair."  *Irick v. Bell*, 565 F.3d
> 315, 324 (6th Cir. 2009).  [Courts] first determine whether the prosecution's
> conduct was improper.  *Id*.  Second, [courts] determine whether that

17

improper conduct was flagrant by considering four factors: "(1) whether the evidence against the defendant was strong; (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally." *Id*. (internal quotation marks omitted).

*Wogenstahl v. Mitchell*, 668 F.3d 307, 328 (6th Cir.), *cert. denied*, __ U.S. __, 133 S. Ct. 311 (2012).

## 1. Vouching

Petitioner claims that the prosecutor vouched for Rosalind Johnson's credibility during closing arguments. Petitioner maintains that the comments were prejudicial and deprived him of a fair trial. The Michigan Court of Appeals, however, concluded that the prosecutor did not commit misconduct by commenting on Mrs. Johnson's credibility.

A prosecutor engages in improper vouching

"when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor] behind that witness." [*United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999)]. This generally involves either blunt comments asserting personal belief, or comments that imply special knowledge of facts not before the jury or the credibility or truthfulness of the witness. *Id*.

*United States v. Reid*, 625 F.3d 977, 982 (6th Cir. 2010).

At Petitioner's trial, the prosecutor said:

I am going to suggest to you, ladies and gentleman, that just because somebody may not have a big formal education and understand a lot of flowery language, that it doesn't make them dumb. It doesn't make them, not know who shot at them.

Some of the smartest people around can't read and write, and anybody, even a dog knows when they are being kicked on purpose or

18

tripped over accidentally.  So don't let somebody put in your mind that because Miss Johnson might not be sophisticated, she doesn't know who shot at her, or that she doesn't deserve justice because somebody shot at her.  Keep that in mind.

(Trial Tr. Vol. II, 15-16, Jan. 30, 2008.)

Petitioner claims that the jury could have inferred from these remarks that everything Rosalind Johnson said was true because the prosecutor was insisting that Rosalind Johnson should be believed, no matter how unsophisticated she might appear. The prosecutor, however, did not indicate a personal belief in Mrs. Johnson's credibility. Nor did the prosecutor imply that she had special knowledge about Mrs. Johnson.  She was merely saying that even an unsophisticated and uneducated person deserves justice and is capable of knowing what happened.

Furthermore, although the remarks were deliberately made, they were not extensive and likely did not mislead the jury or prejudice Petitioner, because Robert Johnson's testimony was sufficient to convict Petitioner of the charged crimes.  The trial court, moreover, instructed the jurors at the beginning and at the end of the trial that the attorneys' arguments were not evidence, but were meant to help the jurors understand the evidence and each side's theories.  The trial court also instructed the jurors to use their common sense and general knowledge in weighing and judging the evidence.  The court explained how to evaluate the credibility of witnesses, and the court stated that the jurors could reject some or all of what the witnesses said.  (Trial Tr. Vol. I, 54-57, Jan. 29, 2008; Trial Tr. Vol. II, 70-74, Jan. 30, 2008.)

19

In light of the jury instructions and Robert Johnson's incriminating testimony, the prosecutor's comments about Rosalind Johnson were not flagrant, even assuming that they amounted to improper vouching. Petitioner therefore has no right to relief on the basis of his claim that the prosecutor vouched for Rosalind Johnson's credibility.

### 2. Commenting on Petitioner's Failure to Testify

Petitioner asserts that the prosecutor violated his rights under the Fifth Amendment by commenting on his decision not to testify. The Michigan Court of Appeals concluded on review of this claim that Petitioner had failed to demonstrate that the prosecutor engaged in misconduct and that the alleged misconduct affected the outcome of the case.

"[A] criminal defendant has an 'absolute right not to testify.'" *Salinas v. Texas*, __ S. Ct. __, __, No. 12-246, 2013 WL 2922119, at *4 (U.S. June 17, 2013) (quoting *Turner v. United States*, 396 U.S. 398, 433 (1970) (Black, J., dissenting)). And "the Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615 (1965). This rule "applies to indirect as well as direct comments on the failure to testify." *Raper v. Mintzes*, 706 F.2d 161, 164 (6th Cir. 1983).

The disputed remark here is the prosecutor's comment during her rebuttal argument that "every one of you knows that today is the date for [the defendants] to step up to the plate and be accountable for their behavior . . . ." (Trial Tr. Vol. II, 64, Sept. 30,

2008.)  Petitioner claims that, because only he and his co-defendant could have refuted the complaining witnesses' version of what happened, the jury could have interpreted the prosecutor's comment to be a reference to his and his co-defendant's failure to testify at trial.  Petitioner contends that the remark was an attempt to persuade the jury to convict him on the basis that his silence at trial was an admission of guilt.

> The prosecutor made a similar remark during her initial closing argument, saying,
>
> Today is the day.  Today is the day for these two men to take responsibility for their behavior.  That's what this is about.  And that's up to you now to do that.

(*Id*. at 28.)  Those remarks were prefaced by references to Deshawn Hardwick, who pleaded guilty for his participation in the shooting incident, and Robert Johnson, who went to jail as a result of hitting Deshawn's brother with his car.  The prosecutor was saying that both Deshawn and Robert took responsibility for their conduct and that the defendants likewise should assume responsibility for their behavior.

At no time did the prosecutor mention Petitioner's silence or failure to testify. The Court therefore disagrees with Petitioner's contention that the jury would reasonably infer from the prosecutor's remarks that Petitioner's failure to testify was an admission of guilt.  The prosecutor was arguing that the defendants should be held accountable for their crimes.  Nevertheless, this Court concludes that these remarks by the prosecutor should not be repeated in future cases given the remote possibility that the jury could infer that a defendant should take responsibility by explaining his behavior.

21

The trial court informed the jurors that the defendants were presumed innocent and were not required to testify, prove their innocence, produce evidence, or do anything. (Trial Tr. Vol. I, 33-34, 54, Jan. 29, 2008.)  This cured any possible prejudice by inference.  Further, at the close of the trial, the court charged the jurors not to let their verdict be affected by the fact that the defendants did not testify.  The court explained that each defendant had the absolute right not to testify.  (Trial Tr. Vol. II, 75-76, Jan. 30, 2008.)  "[J]uries are presumed to follow their instructions."  *Richardson v. Marsh*, 481 U.S. 200,  211 (1987).

To conclude, Petitioner's Fifth Amendment right to have the prosecutor refrain from commenting on his silence was not violated, and the state appellate court's decision on Petitioner's claim was objectively reasonable.  Consequently, Petitioner is not entitled to habeas relief on the basis of the prosecutor's comment about it being time for Petitioner to "step up to the plate."

### 3.  Trial Counsel's Failure to Object

Petitioner argues that his trial attorney was ineffective for failing to object to the prosecutor's comment that "today is the date for them to step up to the plate and be accountable for their behavior."  The Michigan Court of Appeals determined that an objection to the prosecutor's argument would have been overruled because the prosecutor did not commit misconduct.  The Court of  Appeals concluded that Petitioner's ineffective-assistance-of-counsel claim lacked merit.

This Court agrees with the Michigan Court of Appeals.  The prosecutor did not

22

comment on Petitioner's silence or failure to testify.  It follows that defense counsel was not ineffective for failing to object to the prosecutor's comment.  An attorney is not ineffective for failing to make a meritless objection.  *Hoffner v. Bradshaw*, 622 F.3d 487, 509 (6th Cir. 2010).

## IV.  CONCLUSION

The state appellate court's adjudication of Petitioner's claims did not result in a decision that was contrary to Supreme Court precedent, an unreasonable application of, Supreme Court precedent, or an unreasonable determination of the facts.  Accordingly, the petition for a writ of habeas corpus [dkt. #1] is **DENIED**.

The Court declines to issue a certificate of appealability because reasonable jurists would not disagree with the Court's resolution of Petitioner's constitutional claims, nor conclude that the issues presented are adequate to deserve encouragement to proceed further.  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  July 11, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 11, 2013.

s/Deborah Tofil_____

Case Manager